## Appeal of VAN DE KAMPS HOLLAND DUTCH BAKERS.

Docket No. 1430.   Submitted July 25, 1925.   Decided November 9, 1925.

Additional salary for 1919, voted in 1920, *held* to be deductible as an expense in 1920.

*Eugene D. Williams, Esq.,* for the taxpayer.
*W. Frank Gibbs, Esq.,* for the Commissioner.

Before PHILLIPS, GRAUPNER, and TRAMMELL.

Taxpayer appeals from the determination of a deficiency of $7,173.35 income and profits taxes for 1919 and 1920, resulting, in part, from the refusal to allow taxpayer to deduct additional compensation to its officers of $7,000 in 1919 and $10,500 in 1920.

### FINDINGS OF FACT.

Taxpayer is a California corporation with its principal place of business at Los Angeles. It was organized in December, 1918, as the result of the merger of two corporations, T. J. Van De Kamp Co., wholesale bakers, and Van De Kamp & Frank, retail bakers.

T. J. Van De Kamp was in charge of the wholesale business and L. L. Frank of the retail business.· H. J. G. Bruning was production manager, in charge of the wholesale bakeries. Each of these persons had been with the predecessor corporations for a number of years. When the merger took place G. W. Mackie became a stockholder. The stock of the company was owned as follows:

|  | Shares. |
| --- | --- |
| L. L. Frank | 200 |
| T. J. Van De Kamp | 200 |
| G. W. Mackie | 200 |
| H. J. G. Bruning | 100 |

The company had an investment of $18,000 in the business. Its gross sales for the year 1919 were over $330,000. The business of the company was expanding and during the year 1919 it borrowed approximately $75,000 from its bank. Each of the stockholders was devoting all of his time and energy to building up the business, averaging 12 hours a day, six days a week.

When Mackie first became a stockholder, Frank suggested to him that he would receive the same salary as Frank and Van De Kamp. This suggestion was made without serious consideration and without consultation with the other stockholders, who were also the directors. When brought to their attention this suggestion did not meet their approval, for Mackie was not familiar with the business and his initial services were not considered by Van De Kamp or by Bruning to be worth as much as the services of the others. In the predecessor corporations Van De Kamp had a salary of $70 weekly, Frank $70, and Bruning $55, and they had continued to withdraw this amount. As a temporary arrangement Mackie drew $45 a week. He was in charge of a restaurant conducted by taxpayer.

Taxpayer held semimonthly meetings of its directors. The subject of salaries was a sore spot with all four directors and was frequently brought up for discussion, but, as the corporation needed all its available funds in its business, nothing definite was done until a meeting of the directors in December, 1919, when a motion was

offered and adopted that the officers should be entitled to additional compensation for 1919 services, such compensation to be upon the same basis as the stockholdings. This resolution was offered by Bruning, who thereby suffered most heavily, as the best way to solve a situation that threatened to disrupt the harmony of the institution. The sum of $7,000 was accepted by the directors as the proper amount to be paid as such additional compensation, provided such sum could be paid or set aside without embarrassment to the company. At that time the bookkeeping system was in bad shape—at least two months in arrears in posting—and the exact financial condition was not known to the officers. No record of these proceedings was made in the minute book of the company nor was any amount then credited to the officers upon the books.

At a meeting of the directors held in March, 1920, a financial statement of the corporation was presented and it was considered by the directors that the financial condition was such that additional salaries could be paid to the officers in the amount and upon the basis tentatively agreed upon in December, 1919, and thereupon the following resolution was adopted:

It was moved by Mr. Bruning and seconded by Mr. Van De Kamp that in view of the fact that the executive salaries for the year 1919 were not a fair compensation for services rendered, and whereas the business is now in such financial condition as to be able to properly compensate the executive officers, therefore, be it resolved that Theo. J. Van De Kamp, Lawrence L. Frank and Geo. W. Mackie be credited with two thousand dollars ($2000) each respectively to their salary accounts and that Hubert J. G. Bruning be credited with one thousand dollars ($1000) to his salary account. The motion was carried unanimously.

Such sum was considered to be, and was in fact, additional compensation for services rendered in 1919, and such compensation, together with the other compensation of each of these officers, did not exceed a reasonable salary for the services performed by them during 1919. The Commissioner considered such additional compensation to be dividends and disallowed it as a deduction.

At a meeting of the board of directors held June 17, 1920, it was voted that the salaries of the officers be increased to $125 per week for Van De Kamp and Frank, $90 per week for Bruning and Johnson, who had become a stockholder in the meantime, and $75 per week for Mackie. It was further voted that additional compensation for the past six months be paid as follows: Van De Kamp, Frank, and Mackie $4,000 each, Bruning $2,000, and Johnson $1,000.

Subsequently, on March 1, 1921, the following resolutions were passed by the board:

It was moved by Mr. Van De Kamp, seconded by Mr. Bruning and carried unanimously that the action taken by the Board on June 17, 1920, crediting the salary accounts of the executive officers with certain amounts, be canceled.

It was moved by Mr. Van De Kamp, seconded by Mr. Bruning and carried unanimously that the executive officers of this Company draw an increase of salaries for services during 1920 amounting to $10,500 distributed as follows: L. L. Frank, T. J. Van De Kamp and Geo. W. Mackie each $2,790, H. J. G. Bruning $1,395, N. W. Johnson $735, and that these amounts be reinvested and applied to the Capital Account of this Company.

These amounts were actually withdrawn during 1921. Such additional compensation was considered to be, and was in fact, compensation for services actually rendered, and such additional compensation, as fixed on March 1, 1921, together with other compensation paid during 1920, did not exceed a reasonable salary for services rendered by each of these individuals.

Such additional compensation was disallowed by the Commissioner as a dividend.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, under Rule 50.

### OPINION.

PHILLIPS: The first question presented for our decision is whether the amounts voted as additional compensation were such in fact, or were dividends in the guise of salary. Considering the small salaries drawn, the efforts put forth by the individuals concerned, and the success which attended those efforts, and considering also their previous successful experience in this business (except Mackie, who was new, but whose salary was very low), there can be no doubt that they were underpaid and that the additional payments were justified as compensation. Considering the growing condition of the business and the need for more capital, we are convinced that there was no intention to declare any dividend, and that all the directors had in mind was to secure something like adequate compensation for their services and at the same time adjust the compensation as nearly as could be between them with reference to services performed. Mackie was desirous of having the same compensation as Van De Kamp and Frank. Van De Kamp was not willing to do this, nor was Bruning, who considered that his services were worth more than those of Mackie. The additional compensation on the basis of stock ownership represented a compromise in which Bruning and Mackie each yielded part of his claim for the purpose of reaching some conclusion and restoring harmony in the business.

In such a case as this the facts must be carefully scrutinized to ascertain that the payments are compensation and not dividends, but, once having determined that they are compensation, we have

no doubt that they are to be treated in the same manner as payments for services to persons who are not stockholders, officers, and directors. Payments for services rendered by a stockholder are as much necessary expenses of the business as payments for any other services, for there is nothing to prevent such person, even though a majority stockholder, from turning over the management of the business to another and accepting employment elsewhere.

The statute allows a deduction for " all the ordinary and necessary · expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered." Additional compensation or " bonus " payments have become, especially since this country entered the World War, a recognized form of salary payment, used for the purpose of retaining the interest of the employee in the business without at the same time incurring any obligation in advance of the payment. Services are performed for salaries which would otherwise be inadequate, the person rendering them expecting to receive such a bonus but the employer being under no obligation to pay it. Such payments also have in them an element looking to future services, the recipient anticipating a further similar payment if the business justifies it.

The additional compensation in the present instance was voted not because the persons concerned were stockholders or directors, but because they performed services as employees of the corporation. It was as essential to the corporation to retain their services as it was to retain those of any important employee, and probably more important. It was necessary that they be paid adequate compensation, and such is deductible as an ordinary and necessary expense.

It remains to determine in what year the deduction is to be allowed. Was the obligation incurred in the year when the services were rendered or was it incurred when the additional compensation was voted? Until it was voted there was nothing more than a moral obligation; there was no legal obligation which could be enforced. We must accordingly hold that the $7,000 of additional compensation, voted in 1920 for services rendered in 1919, was an obligation incurred in 1920 and is deductible in that year and not in 1919.

In June, 1920, additional compensation of $15,000 was voted. This was not withdrawn in that year and, in 1921, but before the books for 1920 were closed, this action was revoked and compensation of $10,500 was voted, the amount claimed by taxpayer on its 1920 return. By reason of the voluntary action of the persons involved, any liability for salary by reason of the June resolution was released and the obligation under the new resolution was not incurred until 1921. We conclude that the additional compensation for 1920,

voted in 1921, was not a liability incurred in 1920 and is not a deductible expense in that year.